## *In re* TAYLOR CRUM.

Opinion filed April 21st, 1898.

### Revocation of Attorneys License Not a Criminal Prosecution.

A proceeding to revoke and cancel the license of an attorney is not a criminal prosecution, and need not be brought or entitled in the name of the state.

### Laches in Prosecution Not Available as a Defense.

Laches in prosecution in such a proceeding cannot be available as a defense, when the matter was, with reasonable diligence, trie'd and submitted to the court, and the delay was occasioned by the failure of the court to render a decision.

### Retrial—Supplementary Charges.

Where, in such a proceeding, the matter was submitted to the court, and the presiding judge, after holding the same for between four and five years, went out of office without having rendered any decision thereon, such fact did not amount to an acquittal of the accused of the charges made, and it was proper to retry such charges before the succeeding presiding judge of said court; and upon such retrial it was proper to allow supplemental charges to be filed and heard, covering matters that had occurred since the filing of the original accusations.

### Review Upon Appeal—Disbarment.

While upon appeal in such a proceeding the accused is entitled, under § 437, Rev. Codes, to the judgment of this court upon the facts, yet, on full consideration of all the testimony received or offered in the case, the judgment of the District Court is affirmed.

Appeal from District Court, Cass County; *Glaspell*, J.

Taylor Crum was disbarred from further practicing as an attorney-at-law, and appeals.

Affirmed.

*J. E. Robinson, S. G. Roberts,* and *Ida M. Crum,* (*Taylor Crum in pro per,*) for appellants.

The prosecution is defective not being carried on in the name and by the authority of the State of North Dakota as required by the constitution. Section 97, Art. 4, Const.; *State* v. *Hazledahl,* 2 N. D. 521; *Cox* v. *State,* 8 Tex. App. 254; *Lemons* v. *Peo.,* 6 Am. Rep. 293; *Nicholas* v. *State,* 35 Wis. 308; *Williams*

v. *State*, 27 Wis. 402; *Lopez* v. *State*, 19 Mo. 244. It was error to allow supplementary charges to be filed on rehearing had more than five years after trial and upon matters alleged to have occurred more than five years ago. *In the Matter of——————Gent.* 2 Barn. & Adol. 766; *Garry* v. *Wilkes*, 2 Dowl. Pr. 649; *Ex parte Shipden*, Gent. One, etc., 6 Dowl & Ryland, 339; *People ex rel Noyes* v. *Allison*, 68 Ill. 151; *Burke* v. *Western Land Ass'n*, 42 N. W. Rep. 379. Laches may consist in negligently instituting a suit, and also in negligently prosecuting it after its commencement. *Hagerman* v. *Bates*, 49 Pac. Rep. 142; *Sullivan* v. *Railroad Co.*, 94 U. S. 806; *Johnson* v. *Mining Co.*, 148 U. S. 360; *Brown* v. *County*, 95 U. S. 423; *Sample* v. *Barnes*, 14 How. 75. Appellant refers to his brief in *State* v. *Crum*, (Ante page 299,) submitted at this term upon matters involving his contempt.

*B. F. Spalding*, *W. H. Barnett*, and *J. W. Tilly*, committee of Cass County Bar Association for the proceedings.

The proceeding by which Mr. Crum was brought to answer is not "process" within the meaning of the constitution. *In re Kirby*, 73 N. W. Rep. 92. If process it was amendable. *State* v. *Hazledahl*, 2 N. D. 528. Laches has been the defendants, the hearing was postponed for his convenience and he cannot profit by its having been granted him. *Daggers* v. *Van Dyck*, 37 N. J. Eq. 130, 12 A. and E. Enc. L. 544. Appellants answer in the contempt proceeding, and his pretended apology contained therein, taken as a whole was an additional insult to the court. He cites Macauley's History of England, Chapter V, to point his invective, thus comparing the trial judge to Lord Jeffrey. He was properly disbarred. *In re Wall*, 13 Fed. Rep. 814, S. C. 107 U. S. 265; *Ex parte Cole*, 1 McCrary, 405, 6 Fed. Cases, 2973; *In re Brown*, 4 Pac. Rep. 1085; *Bradley* v. *Fisher*, 13 Wall. 335; *Peo.* v. *Green*, 3 Pac. Rep. 65; *Peo.* v. *Green*, 3 Pac. Rep. 374; *In re Philbrook*, 45 Am. St. Rep. 59 and note; *Delanos Case*, note 42 Am. Rep. 560; *State* v. *Kirke*, 95 Am. Dec. 514; *Burns* v. *Allen*, 2 Am. St. Rep.

860, note. The entire evidence shows moral turpitude. *Ex parte Mason*, 54 Am. St. Rep. 772.

BARTHOLOMEW, J. This is a disbarment proceeding brought in the District Court against Taylor Crum, a member of the bar of this court, resident in Cass County. A trial resulted in an order canceling the license of said attorney, and disbarring him from further practicing as an attorney-at-law. From such order the accused appeals to this court.

Section 437 of the Revised Codes reads as follows: "An appeal lies to the Supreme Court from all orders of the District Court revoking or suspending the license of an attorney and counselor at law; and upon an appeal being taken from such order all the original papers, together with the transcript of the record and proceedings therein, shall thereupon be transferred to the Supreme Court to be there tried and determined as the law and the evidence shall warrant. A judgment of acquittal by the District Court is final." The provisions of this section have been followed in this instance, and, by a proper statement of the case, the entire record, with the proceedings and evidence received or offered, is before us; and the accused is, under the statute, entitled to the judgment of this court both upon the law and the facts.

Among the duties of an attorney, as set forth in section 427, 428, Revised Codes, are the following: (1) To maintain due respect to the courts of justice and judicial officers; (3) to never seek to mislead the judges by any artifice or false statement; (5) to abstain from all offensive personalities. Section 433, *Id.* provides that an attorney's license may be revoked or suspended for a willful disobedience or violation of any order of the court requiring him to do or forbear any act connected with, or in the course of, his profession, or for a willful violation of any of the duties of an attorney as prescribed in the foregoing sections, or for the commission of any misdemeanor involving moral turpitude; and section 7022, *Id.*, makes it a misdemeanor for an attorney to be guilty of any deceit or collusion with intent to deceive the court or a party.

Stated somewhat in chronological order, the history of this proceeding is as follows: On July 20, 1892, a communication from the Cass County Bar Association was presented to the District Court of that county, wherein charges of conduct unbecoming in an attorney, and contrary to his sworn obligations as an attorney, were made against Mr. Crum. At that time the Honorable William B. McConnell was judge of said court, and he so continued until January 1, 1897. Upon the presentation of such communication, the court appointed a committee of three from the members of such bar association, and instructed them to promulgate, and present to the court, specifice charges against the accused. This was subsequently done, and on September 10, 1892, the court, by order, cited the accused to appear and plead to such charges and accusations on October 17, 1892. Thereafter various proceedings were had in the matter, and, in December following, evidence was heard by the court. There is a conflict in the testimony now offered (to be referred to again herein) as to whether or not the matter was ever finally submitted to Judge McConnell. It is conceded, however, that no findings or final order in the matter were ever made by him. On November 16, 1897, said bar association, through a committee of its members duly appointed by the association, made another communication to the said court. The Honorable Charles A. Pollock was then, and is now, the presiding judge thereof. In this second communication the making of the former charges against Mr. Crum was recited, and it was alleged that such charges were still pending and undetermined in said court; and it was further alleged that since the making of such charges said Crum had been guilty of further and gross violations of his duty as an attorney, and the court was requested to direct that such further acts be investigated. The committee appointed by Judge McConnell was, on its own application, released from further service in the matter, as some of its members could no longer serve. Another committee was appointed, additional charges were formulated and presented, and the accused was cited to appear and show cause

on November 22, 1897, why such additional charges should not be made supplemental to the original charges, and the whole tried together. When the accused appeared, he filed an affidavit of prejudice against the judge, and asked that another judge be called in to try the case. This was refused at that time, and subsequently various motions and a demurrer interposed by the accused were overruled, and exceptions saved. Subsequently the court reconsidered its order refusing to call another judge, and set the same aside, and set aside all subsequent orders in the case. And Hon. S. L. Glaspell, Judge of the Fifth District, was called in to hear the case. Of course, this rendered all rulings, on motions and demurrers when Judge Pollock was presiding immaterial, as we can only consider the points made before Judge Glaspell, as renewed here. The matter came on for hearing December 11, 1897, both parties being represented by counsel. The counsel for the accused objected to proceeding upon all the counts named in the accusations, for the reasons that the old charges "were submitted in the fall of 1892 to Hon. Wm. B. McConnell, and that his failure to decide the case against Mr. Crum, and his allowing Mr. Crum to continue in practice before him for five years, was in fact a decision in favor of Mr. Crum." This objection was not tenable. As stated, whether or not there had ever been a submission of the matter to Judge McConnell was a disputed question; but, granting that there had been such submission, the objection, in effect, admits that no formal decision had ever been rendered by Judge McConnell. Hence, when that judge went out of office the matter stood just as any case would stand that had been submitted to the court, but not determined. No rights were lost or obligations released. They could be enforced, however, only by another hearing before another judge. Nor do we think there is any force in the contention that the prosecution had been guilty of such laches in the prosecution of the original charges that it ought not at this late day to be permitted to press them. We recognize the doctrine that laches in prosecuting a civil action, where property rights have been

affected, may be good ground for refusing relief. *Johnston* v. *Mining Co.*, 148 U. S. 360, 13 Sup. Ct. 585. But no such case is made here. On the theory of the accused, the prosecution had been diligent up to the point of submission. If thereafter there was delay, the prosecution was not responsible for it. The accused could just as rightfully and just as effectually insist upon a decision, as the prosecution. Since the prosecution was entitled to insist upon the former charges, it follows that it was proper to treat the new charges as supplemental to the old, and dispose of them all in one hearing. The accused then demurred to the charges, raising the points (1) that there is a defect of parties, or, rather, that there is no party plaintiff; (2) that the charges do not state facts sufficient to constitute a cause of action; (3) that the proceeding is not in the name or by the authority of the State of North Dakota; and (4) that the charges are, on their face, barred by the statutes of limitations. It would be proper to dispose of this demurrer with the single remark that it was not interposed until after the accused had pleaded to the facts, and no leave was given or asked to withdraw that plea. It is plain that, so far as the demurrer applies to the original proceedings, it cannot be considered now. But, treating the second and fourth grounds as applying to the supplemental charges, it will appear at a glance, when we discuss the allegations in connection with the testimony, that the charges are sufficient in substance. Nor do we know of any statute of limitations in this state that is applicable to this proceeding. Should we hold, following the suggestion of the Supreme Court of Illinois in *People* v. *Allison*, 68 Ill. 151, that the analogies of the law require that these charges should be barred within the same time that misdemeanors are barred still it would not appear affirmatively that any of the charges, original or supplemental, were barred when proceedings thereon were commenced. In response to the demurrer, however, the attorneys for the prosecution asked leave to amend the title to the proceedings, and such leave was granted,

and complaint is made of such ruling. The ruling was harmless in any event. No amendment of the title was necessary, nor was any ever in fact made. This is not a criminal proceeding. *In re Eaton*, 7 N. D. 269, 74 N. W. Rep. 870. It need not run in the name of the state. *In re Kirby*, (S. D.) 73 N. W. Rep. 92. The title is good as it stands.

We come now to the substance of the charges and the evidence. Of the original charges, only three were pressed upon the hearing. In the first it was alleged that in a certain case pending in the District Court of Cass County, and in which Mr. Crum was attorney for the plaintiff, a motion was made by the defendant to strike the case from the trial calendar, and that on the hearing of the motion, and in opposition thereto, and for the purpose of deceiving the court, Mr. Crum made and presented an affidavit containing matters which were false, and so known by him to be false. On the hearing of this matter there was a direct conflict in the testimony as to whether or not the allegations in such affidavit were in fact false. After a very careful study of the evidence, we are of opinion that such allegations were false, but we are not clear that Mr. Crum knew them to be false. No good purpose would be served by reproducing the testimony. We need only say that, considering the grave nature of the accusation, the stigma that would ever be left upon the character of the accused, should we find that the accused knowingly swore falsely, it would be contrary to our duty to so find, unless such fact be unquestionably proven. See *In re Houghton*, 67 Cal. 511, 8 Pac. Rep. 52. The second charge alleged that in an action in Justice's Court, Mr. Crum, as plaintiff, obtained a judgment against a woman for a balance due him for fees and professional services, and that subsequently he filled up an execution on said judgment, and presented it to the justice for his signature, and that it was duly signed, and placed by said Crum in the hands of an officer; that in filling up said execution said Crum inserted therein that said judgment was for "labor and services," and said execution was levied upon property that was exempt from seizure. The point

to the charge lies in the fact that our statute then in force allowed but very limited exemptions as against a judgment for "laborers' or mechanics' wages," and, by the insertion of the words "labor and services" in the execution, the officer was induced to seize property that would have been exempt from seizure upon an ordinary judgment, but was not exempt as a against a judgment for laborers' or mechanic's wages. It is urged that Mr. Crum inserted the words in the execution for the purpose of procuring what he knew to be an unlawful and oppressive advantage to himself. Mr. Crum admits in his testimony the insertion of the words, but seems to claim that, in a general way they expressed the truth. But it is too clear to admit of question that he had some purpose to serve in placing those words in the execution. He suggests no reason whatever for so doing, and we can conceive of none, except that above stated. The evidence shows that it did in fact accomplish that purpose, and that Mr. Crum knew it. The justice testifies, in effect, that when he signed the execution he did not know that the inserted words were there; that he would not have signed it, had he so known; that knowing Mr. Crum to be an attorney, he supposed, of course, the execution was properly drawn, and signed it withwout reading. It cannot be doubted that Mr. Crum intended and expected that the justice would so treat it. He deceived the court. This was a clear violation of his sworn duty as an attorney. He also, by subterfuge, obtained an unlawful and oppressive advantage. This involved moral turpitude intolerable in a member of the bar, and brings the case within the provison of section 7022, Revised Codes. The remaining one of the old charges consists in the use by Mr. Crum of violent and abusive language to a juror who had been a member of a jury that had just returned a verdict against one of Mr. Crum's clients. The language was highly unbecoming in an attorney, and its use is clearly shown. Of the supplemental charges, the first to the fifth, inclusive, relate exclusively to the facts set forth in the contempt proceedings. *State* v. *Crum*, 7 N. D. 299, 74 N. W. Rep. 992. As the undisputed

facts are there fully stated, we need not repeat them here. Nor can it be doubted that the facts, as there set forth, clearly show a willful disobedience by Mr. Crum of an order of the court, and a failure on his part to maintain the respect due to a court of justice. Concerning the remaining six accusations contained in the supplemental charges, we do not care to speak in detail. One charges disrespectful language to the District Court, and one to the Justice's Court; but in neither instances was the language used so flagrantly disrespectful as that used upon the occasion mentioned in the contempt proceedings, but both are fully sustained by the evidence. The other charges show mani-. festations on the part of Mr. Crum of a violent temper, and the use of disrespectful and abusive language to opposing counsel in the trial of cases. The evidence shows plain violation of that provision of law which requires an attorney to abstain from all offensive personalities. That, under the charges and the testimony, the accused is a proper subject for discipline, there can be no doubt. Of the 14 charges pressed against him on the hearing, 13 are so clearly proven that we must regard them as established. We cannot, then, as in a less aggravated case we might, permit our judgment to be influenced by the personal consequences to the accused.

The judgment of the District Court must be affirmed. All concur.

(75 N. W. Rep. 257.)

NOTE—Mr. Crum's application to the Supreme Court of Minnesota, for admission as an attorney denied, because of the disbarment. *In re Crum*, 75 N. W. Rep. 385.